IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

ROY CAMPBELL, an individual, CHAD
MARMOLEJO, an individual, TOMMY
PARTEE, an individual, and OREGON
MINING ASSOCIATION, an Oregon non-
profit corporation,

        Plaintiffs,

        v.

OREGON DEPARTMENT OF STATE
LANDS, OREGON DEPARTMENT OF
ENVIRONMENTAL QUALITY, OREGON
DEPARTMENT OF GEOLOGY AND
MINERAL INDUSTRIES, JIM PAUL,
in his official capacity as Director, Oregon
Department of State Lands, PETE
SHEPHERD, in his official capacity as Acting
Director, Department of Environmental
Quality, and BRAD AVY, in his official
capacity as State Geologist, Department of
Geology and Mineral Industries,

        Defendants.
_____

Case No. 2:16-cv-01677-SU

**OPINION
AND ORDER**

SULLIVAN, United States Magistrate Judge:

In this action, plaintiffs Roy Campbell, Chad Marmolejo, Tommy Partee, and the Oregon Mining Association challenge Oregon Senate Bill 838 ("SB 838") as preempted under the Supremacy and Property Clauses of the U.S. Constitution, art. VI, cl. 2 & art. IV, § 3, cl. 2, by various federal mining laws. Defendants are Oregon state departments and their directors. Defendants have moved to dismiss plaintiffs' Amended Complaint for failure to state a claim. (Docket No. 6). The Court heard oral argument on March 15, 2017 (Docket No. 17), and received supplemental briefing (Docket Nos. 18, 19).

For the following reasons, the Court STAYS this action pending a decision by the U.S. Court of Appeals for the Ninth Circuit in *Bohmker v. Oregon*, 16-35262 (9th Cir. 2017).

## FACTUAL BACKGROUND

### I. The Parties

Each individual plaintiff is a "small-scale miner" with a "valid federal recorded mining claim." Am. Compl. ¶¶ 7, 8, 16, 17, 26, 27 (Docket 1-1). Plaintiffs allege that it is "physically and financially infeasible to explore, develop, and extract minerals" from their mining claims "with non-motorized equipment such as a pick, shovel, and gold pan," *id.* ¶¶ 13, 24, 32, and "physically and financial infeasible" for plaintiff Marmolejo "to use hand tools . . . to explore and develop minerals . . . without the [use] of a motorized suction dredge," *id.* ¶ 21. Plaintiff Oregon Mining Association is a non-profit that "represents the interests of miners." *Id.* ¶ 35.

Defendant Oregon Department of State Lands administers, and has adopted rules to implement, SB 838. *Id.* ¶ 36. It has also "delineated Essential Salmonid Habitat governing the prohibition of mining under SB 838." *Id.* Defendant Oregon Department of Environmental Quality administers permits governing small-scale placer and precious metal mining operations

Page 2 – OPINION AND ORDER

as to disposal of wastewater and extraction from streambeds. *Id.* ¶ 38. Defendant Oregon Department of Geology and Mineral Industries regulates surface mining and administers mining permits. *Id.* ¶ 40. The individual defendants are the directors, or acting directors, of these departments, each sued in his official capacity. *Id.* ¶¶ 37, 39, 41.

## II.     Senate Bill 838

SB 838 places a five-year moratorium on motorized precious metal mining in and around the beds and banks of certain Oregon waterways, including waterways on federal land. Am. Compl. ¶ 1; *see also* Defs. Mot. Dismiss, Ex. A (Docket No. 6) (text of SB 838). The moratorium applies to areas designated "essential indigenous anadromous salmonid habitat" or areas "containing . . . naturally reproducing populations of bull trout." SB 838 § 2(1). Within these protected areas, SB 838 prohibits motorized precious metal mining from placer deposits of riverbanks or riverbeds, and from other placer deposits, where mining would cause removal or disturbance of streamside vegetation and impact water quality. *Id.* These mining activities are prohibited only up to the "line of ordinary high water," and "100 yards upland perpendicular to the line of ordinary high water" located "above the lowest extent of the spawning habitat" in a river containing an essential salmonid habitat or a reproducing bull trout population. *Id.* The moratorium went into effect January 2, 2016, and lasts until January 2, 2021. *Id.* §§ 3-4. SB 838 also limits the number of operating mining permits the Department of Geology and Mineral Industries may issue. *Id.* §2(3).

## PROCEDURAL BACKGROUND

Plaintiffs commenced this action in Oregon state court on July 27, 2016. Notice of Removal, Ex. 1, at 29-55 (Docket No. 1-1). In their original Complaint, plaintiffs sought declaratory judgment regarding SB 838 on two counts: "Preemption under the Supremacy and

Page 3 – OPINION AND ORDER

Property Clauses as a facial challenge," and "Preemption under the Supremacy and Property Clauses as applied to plaintiffs." *Id.*, at 45, 49. Plaintiffs also sought an injunction against defendants from enforcing SB 838. *Id.*, at 54. Plaintiffs filed an Amended Complaint, dated the same day, asserting the same claims, and seeking the same relief. *Id.*, Ex. 1, at 2-28. On August 19, 2016, defendants removed the action to this Court on the basis of federal question jurisdiction, 28 U.S.C. §§ 1331, 1441(a). (Docket No. 1). On September 23, 2016, defendants moved to dismiss the Amended Complaint for failure to state a claim. (Docket No. 6).

The Court heard oral argument on defendants' Motion to Dismiss on March 15, 2017. (Docket No. 17). At the hearing, the Court raised whether it should stay this action pending the Ninth Circuit's decision in *Bohmker v. Oregon*, 16-35262 (9th Cir. 2017), which likewise concerns a constitutional preemption challenge to SB 838 based on federal mining law. The parties submitted supplemental briefing on whether to stay this action, and also on the viability of as-applied, as opposed to facial, preemption challenges. (Docket Nos. 18, 19).

## LEGAL STANDARD

A district court has the inherent power to stay its proceedings. *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.").

> A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court.

*Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979). In considering whether to issue a stay, a court must consider three factors: (1) potential prejudice to the parties from staying, (2) hardship and inequity to the parties from not staying, and (3) the judicial resources that would be saved by staying. *See CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962); *Oregon* ex rel. *Kroger v. Johnson & Johnson*, No. 11-cv-86-AC, 2011 WL 1347069, at *2 (D. Or. Apr. 8, 2011). "If there is even a fair possibility that the stay will work damage to some one else, the stay may be inappropriate absent a showing by the moving party of hardship or inequity." *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (alteration, quotation omitted). "A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Levya*, 593 F.2d at 864. "[B]eing required to defend a suit, without more, does not constitute a clear case of hardship or inequity." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) (quotation omitted).

## ANALYSIS

### I. *Bohmker v. Oregon*

In *Bohmker v. Oregon*, this district court considered on summary judgment a challenge to SB 838 as preempted by federal mining laws, specifically, the Mining Law of 1872, 30 U.S.C. § 22 *et seq.*, and the Multiple Use Act of 1955, 30 U.S.C. § 601 *et seq.* 172 F. Supp. 3d 1155 (D. Or. 2016). The *Bohmker* plaintiffs were small-scale individual miners as well as "mining groups and associations, and businesses related to the mining industry." *Id.* at 1157. Defendants were the State of Oregon and certain of its officials. *Id.* In conducting its preemption analysis, the district court considered, *inter alia*, the Supreme Court's decision in *California Coastal Commission v. Granite Rock Co.*, 480 U.S. 572 (1987), and this Court's decision in *Pringle v.*

Page 5 – OPINION AND ORDER

*Oregon*, No. 2:13-cv-00309-SU, 2014 WL 795328 (D. Or. Feb. 25, 2014). The court held that federal mining law did not preempt SB 838: federal law did not preempt state mining regulations under the doctrines of express preemption, field preemption, or conflict preemption, *Bohmker*, 172 F. Supp. 3d at 1162-63; SB 838 was a reasonable environmental regulation, not a land-use law, *id.* at 1163-64; SB 838 was not a ban on mining, *id.* at 1164-65; and "[w]hether or not [SB] 838 makes mining 'commercially impracticable' does not affect the . . . preemption analysis," *id.* at 1165.

The *Bohmker* plaintiffs appealed. *Bohmker v. Oregon*, 16-35262 (9th Cir. Apr. 7, 2016). The appellate briefing is complete. (Docket Entries 7, 29, 57). Oral argument is scheduled for November 2017. (Docket Entry 66). Numerous entities, including the federal government, the States of California and Washington, law professors, advocacy groups, and industry organizations, have submitted amicus briefs on both sides. (Docket Entries 10, 13, 35, 36, 38). The *Bohmker* plaintiff-appellants argue that SB 838's restriction on motorized mining on federal lands is preempted under conflict and field preemption principles because (1) it contravenes the Mining Law's policy commitment to federal lands being "free and open" for mining, *see* 30 U.S.C. § 22; (2) under *Granite Rock,* SB 838 is not a reasonable permit system but a broad mining ban and a land-use statute; and (3) SB 838 interferes with the "accomplishment of the full purposes and objectives," of federal mining law, *see Granite Rock*, 480 U.S. at 581. (Docket Entries 7, 57). In response, the State of Oregon argues that SB 838 is an environmental regulation and a valid exercise of the state's police power to protect its fish and waters from specific environmental harms; that there is no conflict with federal mining laws, whose purpose is to protect miners' acquisition of property rights to minerals on federal land; and that SB 838 is

not a land-use law. (Docket Entry 31). More broadly, the appeal considers preemption under the Mining Law of 1872, the Multiple Use Act of 1955, the Mineral Policy Act of 1970, 30 U.S.C. § 21a *et seq.*, and the Federal Land Policy and Management Act of 1976, 43 U.S.C. § 1701 *et seq.* The case law argued includes *Granite Rock*, as well as an Eighth Circuit decision striking down a county mining permitting ordinance, *see S.D. Mining Ass'n v. Lawrence Cty.*, 155 F.3d 1005 (8th Cir. 1998), and the California Supreme Court's decision upholding of a moratorium on suction dredging mining permits, *see People v. Rinehart*, 1 Cal. 5th 652 (2016).

## II. Analysis of the Stay Factors

### A. Potential Prejudice Caused by a Stay

There is some potential prejudice to plaintiffs from staying this case, but the Court finds such prejudice not great. "This case is in the early stages of litigation and in all likelihood, the stay will not be lengthy." *Shahin v. Synchrony Fin.*, No. 8:15-cv-2941-T-35EAJ, 2016 WL 4502461, at *2 (M.D. Fla. Apr. 12, 2016). There is very little risk of evidence being lost, of witnesses' memories fading, or of other spoliation, especially as the key evidence should come from the parties themselves. *See Burke v. Alta Colls., Inc.*, No. 11-cv-02990-WYD-KLM, 2012 WL 502271, at *2 (D. Colo. Feb. 15, 2012) (finding little risk of evidentiary loss in issuing a temporary stay pending decision of key issues in another case then before the Supreme Court, and stating that "[i]t is not uncommon for lower courts to stay proceedings in pending matters when cases containing material issues are awaiting determination by" appellate courts). The chief harm would be a delay in plaintiffs' resumption of their motorized mining, as plaintiffs have requested an injunction against enforcing SB 838.

Plaintiffs, in their supplemental briefing, argue that a stay would harm them given the limited mining opportunities available while SB 838 is in effect, that they have already endured

Page 7 – OPINION AND ORDER

significant delays (and resulting lost income) in having their mining plans of operations approved, that the geological and meteorological limits on mining further narrow possible mining operations under SB 838, that any mining plaintiffs were to conduct could entail criminal sanctions under SB 838, and that plaintiff Marmolejo is particularly harmed because the Endangered Species Act review of his plan of operations was suspended due to SB 838. *See* Pls. Suppl. Br., at 10-12 (Docket No. 18).[1]

While the Court is mindful that this potential harm would not be insignificant to plaintiffs, such harm is not dispositive. "[T]hat Plaintiffs will be delayed in protecting their property rights[] merely describes the nature of a stay. Courts have long acknowledged that a delay inherent to a stay does not, in and of itself, constitute prejudice." *PersonalWeb Techs., LLC v. Facebook, Inc.*, Nos. 5:13-cv-01356-EJD; 5:13-cv-01358-EJD; 5:13-cv-01359-EJD, 2014 WL 116340, at *5 (N.D. Cal. Jan. 13, 2014); *Convergence Techs. (USA), LLC v. Microloops Corp.*, No. 5:10-cv-02051 EJD, 2012 WL 1232187, at *2 (N.D. Cal. Apr. 12, 2012) ("Whether good or bad, delay is an unavoidable consequence to any stay, and numerous courts have determined that a general claim of delay is not enough on its own to constitute undue prejudice. This court agrees that delay, although undoubtedly frustrating for Plaintiff, is not unduly prejudicial here." (citations omitted)).

This factor weighs against a stay, but not strongly.

---

[1] Defendants, by contrast, in their supplemental briefing argue that a stay would in fact benefit, not harm, plaintiffs; defendants assume (for reasons not made clear) that the Court would grant their Motion to Dismiss if it did not enter a stay, and so for plaintiffs to resume mining they would—following their loss below—have to win an appeal overturning this Court's decision, which would entail delays far longer than waiting for *Bohmker*'s decision. Defs. Suppl. Br., at 5-6 (Docket No. 19). The Court does not find or assume in this analysis that a stay would indeed benefit plaintiffs. Further, nothing the Court has issued, written, or stated should be interpreted as to how it would rule on defendants' Motion to Dismiss absent a stay.

Page 8 – OPINION AND ORDER

B.     **Hardship or Inequity of Not Staying**

The Court finds that not staying this case could burden the parties with the undue hardship of proceeding with litigation, engaging in discovery, and preparing for dispositive motion practice and potentially for trial, all of which could prove wasteful depending on how the Ninth Circuit decides *Bohmker*. Because *Bohmker* is fully briefed and scheduled for oral argument in November 2017, while this action is only in its initial stages, a stay would risk little, and could potentially save the parties significant time and effort. *See Small v. GE Capital, Inc.*, No. EDCV 15-2479 JGB (DTBx), 2016 WL 4502460, at *3 (C.D. Cal. June 9, 2016) ("[F]urther litigation absent a ruling" on key issues by appellate court "may be unnecessary and will require both parties and the court to spend substantial resources."). Although defendants' being required to defend a suit is not alone sufficient to warrant a stay, *see Lockyer*, 398 F.3d at 1112, the burden of proceeding with this litigation—potentially unnecessarily—is nonetheless a factor in favor of granting a stay (in conjunction with the savings to judicial resources, discussed below) that the Court may consider.

In their supplemental briefing, defendants argue that proceeding with this action while *Bohmker* is still pending would likely waste resources. Defs. Suppl. Br., at 6 (Docket No. 19). By contrast, plaintiffs argue that not staying would cause little harm to defendants, because all defendants would have to do absent a stay would be to proceed in the usual course of litigating this action. *See* Pls. Suppl. Br., at 12-13 (Docket No. 18).

"The proponent of a stay need not make a showing of hardship or inequity unless its opponent first demonstrates that there is a 'fair possibility' that a stay will cause it injury." *Hawai'i v. Trump*, No. CV 17-00050 DKW-KJM, 2017 WL 536826, at *3 (D. Haw. Feb. 9, 2017) (citing *Dependable Highway*, 498 F.3d at 1066). Given that plaintiffs have not shown

Page 9 – OPINION AND ORDER

significant injury resulting from a stay, defendants need not show significant hardship, beyond the unnecessary expenditure of time and resources to continue potentially unneeded litigation. In light of this, defendants have made a sufficient showing of hardship and inequity from not staying. *See Ramos v. Capital One, N.A.*, No. 17-cv-00435-BLF, 2017 WL 895635, at *3 (N.D. Cal. Mar. 7, 2017) ("A denial of stay would require both parties to expend significant resources to litigation. Recognizing the potential burden for both parties, the potential hardship from denying the stay weighs slightly in favor of granting it.").

Thus, the risk of hardship and inequity from not staying favors entry of a stay.

### C. Judicial Resources and Economy

The Court finds that the interests of judicial economy very strongly favor staying this action pending a decision in *Bohmker*. The key issue to be decided here is identical to that before the Ninth Circuit: whether federal law mining law preempts SB 838. The *Bohmker* plaintiffs, like plaintiffs here, are small-scale miners who contend that they rely on motorized mining methods. Defendants in both cases are the State of Oregon, its officials, and/or its departments. The federal laws that plaintiffs cite here are the same as those cited in *Bohmker*: the Mining Law, the Multiple Use Act, the Mineral Policy Act, and the Federal Land Policy and Management Act. The precedents invoked in both cases are the same: *Granite Rock*, *South Dakota Mining Ass'n*, *Rinehart*, and *Pringle*. The arguments plaintiffs make here mirror those in the appeal: that SB 838 is preempted because it conflicts with the Mining Law's commitment to "free and open" federal lands for mining, because SB 838 is a land-use statute and not a reasonable environmental regulation or valid exercise of the state's police powers, and because SB 838 interferes with the purposes and objectives of federal mining law. *Bohmker* will very likely decide all these issues.

Page 10 – OPINION AND ORDER

*Bohmker* will almost certainly determine how this Court must decide defendants' Motion to Dismiss, and could well dispose of this entire matter. *See Myron v. Rodriguez*, No. 3:06-cv-1051-J-TEM, 2008 WL 516753, at *3 (M.D. Fla. Feb. 22, 2008) (staying action pending related appeal in "a case testing the constitutionality of a federal statute directly applicable to the instant action"); *Walker v. Monsanto Co. Pension Plan*, 472 F. Supp. 2d 1053, 1054-55 (S.D. Ill. 2006) (staying certain counts pending a writ of certiorari to the Supreme Court in another case concerning claims "substantially identical" to the claims before the district court, and observing that "[s]uch stays are entered quite routinely").

Allowing the Ninth Circuit—whose decision will be binding on this Court and the parties—to decide these issues will save significant judicial resources, efforts, and time. This Court is reluctant to decide defendants' Motion to Dismiss with the prospect of a potentially contrary and binding appellate decision looming. Such an endeavor would squander judicial resources and present the possibility of inconsistent results. *See Nw. Forest Res. Council v. Robertson*, 711 F. Supp. 1039, 1040 (D. Or. 1989) (staying case pending resolution of another district court action "involv[ing] claims virtually identical" to those before the court, whose resolution "may obviate the need to proceed in this case"). Because the issues are fully briefed before the Court of Appeals, and will be argued in a few months, a stay would not be lengthy.

Plaintiffs argue that a stay would be indefinite. This is incorrect, as it would last only until the Ninth Circuit decides *Bohmker*. *See* Pls. Suppl. Br., at 12-13 (Docket No. 18). Conjecture about a possible Supreme Court petition for review, or other procedural detours, is irrelevant at this time. *Id.*, at 13. Plaintiffs' attempts to distinguish *Bohmker* are unpersuasive. *Id.*, at 13-14. Contrary to plaintiffs' argument, *Bohmker* does involve an as-applied challenge in addition to a facial challenge, *see* Br. of Pls.-Appellants, at 45 n.12, *Bohmker v. Oregon*, No. 16-

35262 (9th Cir. July 14, 2016) (Docket Entry 7), and given the great factual similarities between that case and this one, the Ninth Circuit decision would very likely resolve both the as-applied and facial challenges that plaintiffs bring here. *See Union Steel Mfg. Co. v. United States*, 896 F. Supp. 2d 1330, 1333 (Ct. Int'l Trade 2013) ("Recognizing that—as in the other cases in which stays were issued—a final determination in [related appeal] is likely to be largely, if not wholly, determinative of the [central] issue here, resolution of the parties' disagreement as to [matter before the court] was deferred in the interests of judicial economy and conserving the resources of the parties."); *Reynolds v. Time Warner Cable, Inc.*, No. 16-cv-6165W, 2017 WL 362025, at *2 (W.D.N.Y. Jan. 25, 2017) ("Surely, the [related appellate] decision . . . will clarify many of the issues raised by this litigation and ensure the determination of those issues under the correct legal standards, thus minimizing the risk of revisiting legal determinations on reconsideration or on appeal . . . an outcome that would . . . promote judicial economy." (footnote omitted)).

Thus, a stay would considerably serve the interests of judicial economy.

### D. Balance of the Three Factors

In sum, one factor (potential prejudice from staying) weighs against a stay, but not strongly. The two other factors (hardship and inequity of not staying, and judiciary economy) weigh in favor of a stay, the third greatly so. Accordingly, consideration of the relevant factors strongly counsels the Court to stay this action pending a decision in *Bohmker v. Oregon*. *See Harrington v. Wilber*, 670 F. Supp. 2d 951, 955-56 (S.D. Iowa 2009) (finding no error in magistrate judge's *sua sponte* staying case pending related appeal before the Supreme Court).[2]

---

[2] On June 14, 2017, the Governor of Oregon signed into law Senate Bill 3 ("SB 3"), which repealed SB 838's moratorium on motorized mining in certain areas and replaced it with a permanent ban on motorized mining in certain areas. *See* Defs. Notice of Passage of Senate Bill

Page 12 – OPINION AND ORDER

## CONCLUSION

For the above reasons, this matter is STAYED pending the Ninth Circuit's decision in *Bohmker v. Oregon*. The parties shall notify the Court when the Ninth Circuit issues its decision and shall file supplemental briefing regarding the impact of that decision on this case and defendants' Motion to Dismiss within 15 days of said notice.

IT IS SO ORDERED.

DATED this <u>4th</u> day of <u>August</u>, 2017.

/s/ Patricia Sullivan<br>PATRICIA SULLIVAN<br>United States Magistrate Judge

---

3 (Docket No. 20); Appellants' Citation of Suppl. Authorities, Attach., *Bohmker v. Oregon*, No. 16-35262 (9th Cir. June 19, 2017) (Docket Entry 63) (text of SB 3). SB 3 goes into effect January 1, 2018. Although there are certain differences between SB 838 and SB 3 (SB 3 does not apply to uplands or bull trout habitat, and it differs in geographic scope), the passage of SB 3 does not moot the primary issues presented in this case. Further, SB 3 will not moot the claims of at least one plaintiff, Marmolejo, because he alleges that his plan of operations includes use of a motorized suction dredge in a stream designated as containing essential salmonid habitat, Am. Compl. ¶¶ 19, 22; he will therefore suffer the same alleged injury under SB 3 as he allegedly suffers under SB 838. The parties each submit that SB 3 does not moot this case, *see* Defs. Notice, at 1 (Docket No. 20), and the Court should concur.

Page 13 – OPINION AND ORDER